FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTHER S.,[1] | No:  1:20-cv-03230-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 24, 25.  This matter was submitted for consideration without oral

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  *See* LCivR 5.2(c).

ORDER - 1

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Kelly S. Arefi.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 24, is denied and Defendant's Motion, ECF No. 25, is granted.

## JURISDICTION

Plaintiff Esther S. (Plaintiff), filed for disability insurance benefits (DIB) on March 16, 2018, alleging an onset date of October 31, 2017.  Tr. 165-73.  Benefits were denied initially, Tr. 91-97, and upon reconsideration, Tr. 99-105.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on December 19, 2019.  Tr. 34-68.  On February 19, 2020, the ALJ issued an unfavorable decision, Tr. 12-30, and on October 2, 2020, the Appeals Council denied review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1968 and was 51 years old at the time of the hearing.  Tr. 36-37.  She last worked in May and June 2019 sorting cherries.  Tr. 35-36.  The job ended because it was the end of the cherry season.  Tr. 36.  She also has work experience sorting apple chips, as a janitor, and as a meat seasoner.  Tr. 51.  Plaintiff

has an atrial septal defect and alleges it causes her to feel tired, fatigued, and in pain. Tr. 201. It causes shortness of breath, heart palpitations, and dizziness. Tr. 201. She had open heart surgery in May 2018. Tr. 37, 41. She testified that since her heart surgery, she has had pain in her neck, shoulders, and hip and has frequent headaches. Tr. 45-46.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful

ORDER - 4

activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff engaged in substantial gainful activity since the alleged onset date, but there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments:  chronic heart failure and obesity. Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  She can occasionally crouch and crawl. She must avoid concentrated exposure to extreme cold; extreme heat; pulmonary irritants such as fumes, odors, and gases; and workplace hazards.

Tr. 19.

At step four, the ALJ found that Plaintiff is able to perform past relevant work as an agricultural produce sorter.  Tr. 24.   Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform such

ORDER - 7

as housekeeping cleaner, cashier II, or marker.  Tr. 25.  Thus, the ALJ concluded

that Plaintiff has not been under a disability, as defined in the Social Security Act,

from October 31, 2017, through the date of the decision.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

disability income benefits under Title II of the Social Security Act.  ECF No. 24.

Plaintiff raises the following issues for review:

1.  Whether the ALJ properly considered Plaintiff's symptom testimony; and

2.  Whether the ALJ properly considered the medical opinion evidence.

ECF No. 24 at 2.

## DISCUSSION

### A.    Symptom Testimony

Plaintiff contends the ALJ improperly rejected her symptom testimony.  ECF

No. 24 at 7-13.  An ALJ engages in a two-step analysis to determine whether a

claimant's testimony regarding subjective pain or symptoms is credible.  "First, the

ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff's allegations are not supported by the objective evidence.  Tr. 20.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ observed that Plaintiff's physical exams after heart surgery in May 2018 were generally normal, that her condition had improved, and that her sternal wound had healed well.  Tr. 20 (citing Tr. 446-47, 684, 694, 696, 702, 827-29, 834, 844, 846, 849).  She complained of significant sternal pain in June 2018 but acknowledged she had not been taking pain medication as prescribed and she was improving despite minimal medication.  Tr. 20, 694, 696.  More than a year after surgery, she was noted to have a good result with no residual symptoms and no additional treatment or follow up was recommended.  Tr. 20, 957.

Plaintiff argues she testified that "her primary physical barrier to working is pain, not issues with her heart," and asserts the ALJ "entirely ignores record evidence that [Plaintiff's] pain was significantly aggravated by working."  ECF

No. 24 at 9 (citing Tr. 43, 45).  Plaintiff cites records from June and July 2019 when Plaintiff complained of neck, back, and shoulder, and hip pain.  Tr. 906-07, 910, 911.  She was having worsening neck and hip pain since working sorting cherries and which was improved after taking three days off work.  Tr. 907-08, 910.  She stated she was "grabbing boxes and putting them on the line" and left with "a lot of pain in the neck and hip."  Tr. 911.

The ALJ considered Plaintiff's pain complaints in evaluating her May 2019 diagnosis of cervicalgia.  Tr. 18, 829.  The ALJ noted MRI results showed mild spondylosis C4-7 with no central or foraminal stenosis at any level, Tr. 830, 832.  Tr. 18.  A nerve conduction study led to the conclusion that Plaintiff's neck and upper back pain were primarily muscular and biomechanical in nature, and it was noted that her neck and shoulder pain had previously significantly improved with physical therapy.  Tr. 18, 20, 788-826, 836, 859, 861, 890, 893.  By August 2019, she still complained of pain but said her daughter taught her exercises that helped and was noted to be somewhat improved.  Tr. 21, 919.  She was awaiting an appointment to begin physical therapy.  Tr. 920.  In September 2019, her neck and back pain improved once she increased medication.  Tr. 20, 927.  She felt massage and chronic pain classes had been helpful and got a referral for chiropractic

1  treatment.  Tr. 927.  The ALJ reasonably considered the objective evidence in

2  evaluating Plaintiff's pain allegations.[2]

3      Second, the ALJ found Plaintiff's symptom statements are inconsistent with

4  the longitudinal record.  Tr. 20-21.  Contradiction with the medical record is a

5  sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v.*

6  *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v.*

7  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  The ALJ noted records indicating that

8  post-heart surgery, Plaintiff's symptoms of dizziness and lightheadedness had

9  resolved.  Tr. 20, 694, 859.  Plaintiff agrees that her heart symptoms resolved after

10  surgery but argues her primary physical barrier to working is pain.  ECF No. 24 at

11  9-10.

12      The ALJ observed that Plaintiff complained of intense burning chest pain

13  from her sternum in November 2018, about six months after surgery.  Tr. 20, 859.

14  The ALJ considered Plaintiff's allegations of debilitating pain and concluded that

15  "one would expect her treating providers to note distress, discomfort, or

16  observations of behavior associated with pain."  Tr. 21.  Instead, the ALJ noted

17  that when presenting for medical appointments or exams over the course of the

18  [2] The ALJ also found Plaintiff's cervicalgia is not a severe impairment as it did not

19  cause significant limitations in functioning or did not last for a continuous period

20  of 12 months, a finding which is not challenged by Plaintiff.  Tr. 18.  Nevertheless,

21  the ALJ considered this impairment throughout the decision.  Tr. 18.

ORDER - 12

record, she often appeared in no acute or apparent distress from either her heart issues or her back and neck pain, which the ALJ found to be inconsistent with her allegations of extremely limiting pain and symptoms. Tr. 21, 283 (September 2017), 305 (May 2017), 312 (November 2017), 424-25 (January 2018), 684 (February 2018), 834 (June 2018), 888 (February 2019), 899 (May 2019), 902 (June 2019), 940 (September 2018). The ALJ consideration of the longitudinal record is a reasonable inference based on substantial evidence.

Third, the ALJ found Plaintiff's reported activities are inconsistent with her allegations of debilitating symptoms. Tr. 21-22. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Before her heart surgery in May 2018, Plaintiff reported driving, going out alone and often, shopping once a week, and doing housework.  Tr. 19, 203-04.  About a month after her surgery, Plaintiff was getting frustrated because she had pain with activity and was encouraged to do activities in smaller increments.  Tr. 20, 697.  In October 2018, she reported "difficulty [mowing] her lawn and performing other activities of daily living due to [this] pain." Tr. 20, 894.  She also reported doing more driving, although it was difficult to go long distances or drive in traffic.  Tr.21, 857.  In October, November, and December 2018, Plaintiff reported trying to stay active by cleaning the house, cooking, and crocheting.  Tr. 21, 854, 859, 861, 871.  In September 2019 Plaintiff reported trying to walk on a regular basis, but sometimes got a pain in her right knee or left leg.  Tr. 21, 953; *see* Tr. 898 (walking two miles every other day, no pain while walking for exercise in May 2019).  The ALJ found this is inconsistent with her allegations of incapacitating pain as driving involves use of the head, shoulders and eyes.  Tr. 21, 857.  In all, these activities are not particularly compelling examples of activity inconsistent with Plaintiff's symptoms claims, as many of these activities were qualified by Plaintiff or can be done in increments or in a manner consistent with Plaintiff's allegations.  Nevertheless, the ALJ did not err in considering them; or even if the ALJ did err, the error would be harmless because the ALJ cited other legally sufficient reasons for giving less weight to Plaintiff's symptom claims.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

Fourth, the ALJ found that statements made by Plaintiff to qualify for unemployment are inconsistent with her allegations of disability.  Tr. 22.  Receipt of unemployment benefits may cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working.  *Ghanim*, 763 F.3d at 1165; *Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir. 1988).  Here, Plaintiff confirmed that she received unemployment benefits and held herself out as ready, willing, and able to work and that she continued to look for work.  Tr. 22, 36.  Notwithstanding, if the record does not establish whether the claimant held herself out as available for full-time or part-time work, receipt of unemployment benefits may not be inconsistent with disability allegations.[3]  *Carmickle*, 533 F.3d at 1161-62.  The record is not entirely clear regarding Plaintiff's availability for full-time or part-time work, although she reported that sorting cherries involves a seven-day

---

[3] Plaintiff cites a 2010 letter from the then-chief ALJ in support of the proposition that receipt of unemployment benefits does not disqualify a claimant from a disability claim.  ECF No. 24 at 12-13 (citing letter from Frank A. Cristaudo, Chief Administrative Law Judge, Soc. Sec. Admin., to All Administrative Law Judges (August 9, 2010), *available at* https://www.masslegalservices.org/system/files/library/CALJMemoUnempl.pdf).  However, the same letter goes on to state that an application for unemployment benefits is a factor to be considered with all of the evidence in the record.

ORDER - 15

work week and at least sometimes involves 16-hour days. Tr. 40, 279. Nonetheless, this is a minor point and any error is harmless as other clear and convincing reasons exist to support the ALJ's finding.

Fifth, the ALJ found Plaintiff's return to work detracts from the reliability of her symptom statements. Tr. 22. The ALJ found that Plaintiff perceived she was able to work in the same job as her past work and she returned to work sorting cherries during the period at issue. Tr. 22. The ability to work may be considered in assessing symptom claims. *See Bray v. Comm'r Social Security Admin.,* 554 F.3d 1219, 1227 (9th Cir.2009). Working with an impairment supports a conclusion that the impairment is not disabling. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Bray*, 554 F.3d at 1227 (seeking work despite impairment supports inference that impairment is not disabling). On the other hand, short-term work, which does not demonstrate the ability to sustain substantial gainful employment, may be considered an unsuccessful work attempt instead of substantial gainful activity. *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Plaintiff suggests her work during the relevant period is an unsuccessful work attempt, stating "she unfortunately missed too many days due to pain for her

to successfully work a full-time job." ECF No. 24 at 13 (citing Tr. 903, 906, 907, 910, 911, 914). While the record indicates that Plaintiff missed some days of work in June and July 2019 for pain complaints, she earned wages constituting substantial gainful activity of $2,711 in the third quarter of 2019.[4]  Tr. 17, 186. Plaintiff cites the vocational expert's testimony that six or more unscheduled absences in a year on a persistent basis would lead to termination, ECF No. 24 at 13 (citing Tr. 57), but it does not follow that because Plaintiff missed some days of work over a two-month period that she was or would be terminated. Furthermore, Plaintiff testified her job ended because it was seasonal, not because she missed too many days of work. Tr. 22, 36. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ reasonably considered Plaintiff's return to work in evaluating her symptom claims.

**B.    Medical Opinions**

For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules Regarding the Evaluation of Medical Evidence*,

---

[4] Plaintiff testified that she last worked in May and June 2019, but medical records indicate she reported working in July as well. Tr. 35-36, 910, 911, 914.

ORDER - 17

2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.[5]

Instead, an ALJ must consider and evaluate the persuasiveness of all medical

opinions or prior administrative medical findings from medical sources. 20 C.F.R.

§ 404.1520c(a) and (b). Supportability and consistency are the most important

factors in evaluating the persuasiveness of medical opinions and prior

administrative findings, and therefore the ALJ is required to explain how both

factors were considered. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not

required, to explain how other factors were considered. 20 C.F.R. §

404.1520c(b)(2); *see* 20 C.F.R. § 404.1520c(c)(1)-(5).

    *1. Annie Chisholm, ARNP*

    On October 17, 2018, Ms. Chisholm completed a Medical Report form and

opined that Plaintiff is severely limited and unable to meet the demands of full-

time sedentary work due to slow recovery from heart surgery, depression, and

anxiety. Tr. 726-28. Symptoms included dizziness, sternal chest pain, anxiety,

and depression. Tr. 726. She stated Plaintiff had been limited since August 2017

---

[5] Plaintiff argues the "specific and legitimate" standard continues to apply despite

the new regulations; Defendant argues to the contrary. ECF No. 24 at 14-16; ECF

No. 25 at 11-13. A case decided after the parties' briefs were filed indicates that

the new regulations displace the "irreconcilable" and "incompatible" specific and

legitimate reasons standard. *Woods v. Kijakazi*, 32 F.4th 785, 790-92 (9th Cir.

2022).

ORDER - 18

and would hopefully return to work by May 2019.  Tr. 22, 727.  She also opined that Plaintiff would miss two days of work per month for follow up appointments with her primary care provider, cardiology, and behavioral health.  Tr. 22, 727.

In December 2018, Ms. Chisolm completed a DSHS Physical Functional Evaluation form.  Tr. 867-70, 74.  Ms. Chisolm listed Plaintiff's chief complaints as chronic pain around neck and shoulder and sternal surgical scar, post cardiac operation, with no cardiac symptoms.  Tr. 867.  She opined that Plaintiff is limited to sedentary work, defined as able to lift 10 pounds maximum and frequently lift or carry lightweight article with the ability to walk or stand only for brief periods.  Tr. 874.  Ms. Chisolm indicated that the current limitations would exist for six months.  Tr. 874.

The ALJ found that Ms. Chisolm's opinions are not supported by her examinations or the treatment record.  Tr. 23.  With regard to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1)-(2).  For example, less than two weeks after she completed the Medical Report form noting dizziness as a significant symptom, Ms. Chisolm's treatment notes state that Plaintiff had a recent echocardiogram "which showed no shunting and normal LVEF.  Continues to be asymptomatic without dizziness."  Tr. 22, 854.  Similarly, the ALJ

observed that treatment notes made contemporaneously with the December 2018 opinion indicate only slightly reduced range of motion, exam findings were incomplete, and there was no narrative which reasonably supports an additional six months of limitation to sedentary work more than six months after her heart surgery. Tr. 23, 871-73. This is a reasonable basis for finding the opinions unsupported.

The ALJ also found Ms. Chisolm's opinions are inconsistent with documented improvement, Plaintiff's activities, statements regarding the degree of limitation alleged, and physical exam findings. Tr. 23. "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ found that the limitations assessed by Ms. Chisolm covered the period from August 2017 to May 2019, without regard to improvements in her condition resulting from her May 2018 heart surgery. Tr. 22. Plaintiff appears to misread the ALJ's reasoning and asserts the ALJ erred by stating that Ms. Chisolm did not consider Plaintiff's heart surgery. ECF No. 24 at 16. However, the ALJ's point is that despite her awareness of Plaintiff's heart surgery and documented improvement in her heart condition, Ms. Chisolm's assessment of limitations over the period covered by the opinion did not change. This is a reasonable interpretation of the evidence.

ORDER - 20

Plaintiff argues that the basis for the limitations assessed by Ms. Chisolm is sternal pain, anxiety and depression, not cardiac issues. ECF No. 24 at 17. However, Ms. Chisolm's treatment records support the ALJ's finding that Plaintiff's depression is related to frustration over pain and recovery from surgery and improved with medication. Tr. 18, 704-706, 847. Additionally, Ms. Chisolm did not assess any mental limitations and the ALJ noted that even if some mental limitations were added to the RFC to account for depression and anxiety, the vocational expert testified that those additional restrictions would not preclude work. Tr. 26. Furthermore, as discussed *supra* and referenced by the ALJ, the degree of pain alleged is inconsistent with physical exam findings throughout the record.

### 2. Kaitlyn Llewellyn, PA-C

In August 2019, Ms. Llewellyn completed a Medical Report form and listed diagnoses of cervicalgia, mild cervical levoscoliosis, cervical spondylosis, and left hip pain. Tr. 742-44. She opined that Plaintiff would need to lie down for 30 minutes per day due to neck pain; that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate because work exacerbates symptoms and pain, and that Plaintiff would miss four or more days of work per month because in the last two months, Plaintiff had been seen in the office four times for neck and hip pain. Tr. 742-43. Ms. Llewellyn opined that Plaintiff is limited to sedentary work. Tr. 743.

The ALJ found Ms. Llewellyn's opinion unpersuasive because it is not well supported. Tr. 23. The ALJ noted that the assessment of four or more absences from work per month was based on recent medical appointments, which is not a reasonable basis to conclude there will be an ongoing need for future appointments of that frequency. Tr. 23. The ALJ also observed that Ms. Llewellyn's conclusion that work would exacerbate Plaintiff's condition does not consider the relative demands of Plaintiff's recent work sorting cherries, which involved working seven days a week for potentially up to 16-hours per day, verses lighter duty jobs. Tr. 23. Plaintiff argues Ms. Llewellyn was not considering whether Plaintiff could perform past work but was "looking at what [Plaintiff] was capable of doing." ECF No. 24 at 17. However, treatment notes made contemporaneously with Ms. Llewellyn's opinion indicate that Plaintiff reported her pain worsened with "prolonged standing at work," so the ALJ's inference is reasonable. Tr. 919. The ALJ also found Ms. Llewellyn's opinion is inconsistent with the record supporting a finding that Plaintiff's back and neck pain are nonsevere, as discussed *supra*. Tr. 18, 23. The ALJ's findings are reasonable and based on substantial evidence.

### 3. Phillip Hawley, Psy.D

In October 2018, Dr. Hawley completed a Mental Source Statement form and found no greater than mild limitations in any area of mental health functioning. Tr. 731-33. He noted Plaintiff had "demonstrated some anxiety and depression symptoms since her operation" and that he believed "her symptoms should

ORDER - 22

improve through her recovery and with medication." Tr. 733.  He concluded there

was minimal to no cumulative effect on Plaintiff's ability to sustain work.  Tr. 732.

In July 2019, Dr. Hawley completed a second Mental Source Statement form

and assessed two severe and one marked limitation.  Tr. 734-37.  He opined

Plaintiff would be off-task 21-30% of a workday due to cumulative limitations and

would miss four or more days of work per month.  Tr. 736.  He stated the

limitations had existed since July 2018.  Tr. 736.

The ALJ found Dr. Hawley's 2018 opinion to be persuasive but the July

2019 was not persuasive.  Tr. 23.  The ALJ found that the 2018 is well-supported

with the explanation that Plaintiff's symptoms would improve with recovery from

heart surgery and medication and consistent with treatment records suggesting

Plaintiff's symptoms were transitory and improved relatively quickly with

medication.  Tr. 23.  However, the ALJ found Dr. Hawley's 2019 opinion

assessing marked and severe limitations since July 2018 does not explain its

inconsistency with the 2018 opinion, which assessed only mild or no limitations as

of October 2018.  Tr. 23.  The ALJ noted Dr. Hawley's 2019 opinion is

unsupported by explanation or the medical record and is inconsistent with

Plaintiff's ability to work for a period of time during 2019.  Tr. 23.  These findings

are supported by substantial evidence.

Plaintiff contends that consideration of Plaintiff's work activity in 2019 does

not support a finding that Dr. Hawley's opinion is inconsistent because Plaintiff

ORDER - 23

sought frequent medical treatment and days off during that time.  ECF No. 24 at

20.  However, as noted *supra*, Plaintiff testified she worked seven days per week

during this time, and the record indicates that sorting cherries involves workdays

up to 16 hours per day.  She testified that her job ended due to the end of the cherry

season, not due to frequent absences.  Tr. 22, 36.  The ALJ's conclusion is

reasonable and supported by substantial evidence in light of these factors.

### 4. *Tasmyn Bowes, Psy.D*

In December 2018, Dr. Bowes completed a DSHS Psychological/Psychiatric

Evaluation form.  Tr. 753-57.  Dr. Bowes diagnosed major depressive disorder and

assessed five moderate limitations, plus two marked limitations in the ability to

understand, remember and persist in tasks by following detailed instructions and in

the ability to perform activities within a schedule, maintain regular attendance, and

be punctual within customary tolerances.  Tr. 756.  Mental status exam results

included tearfulness and dysphoric mood but adequate appearance, normal speech,

appropriate and congruent affect, normal thought process, orientation, memory,

fund of knowledge, abstract thought, and insight and judgment.  Tr 757.

Concentration was not within normal limits and a note referred to Trails results,

where Plaintiff made one error on Trails A and did not attempt Trails B.  Tr. 755,

757.

ORDER - 24

The ALJ found that to the mild and moderate limitations assessed by Dr. Bowes are consistent with the longitudinal record which reflects that Plaintiff's mental symptoms are related to frustration over her physical impairments and are transient.  Tr. 24.  The ALJ noted that the overall record indicates that mental limitations cause no significant limitation in Plaintiff's ability to perform work-related activities for a continuous 12-month period.  Tr. 24.  The mild and moderate limitations are also supported by Dr. Bowes' mental status exam findings, which is mostly within normal limits except for the Trails test.  Tr. 24.

The ALJ found that disabling limitations are inconsistent with Dr. Bowes' statement that once Plaintiff obtained stable housing and basic needs, vocational training and services would assist in her long-term stability.  Tr. 24, 756.  The ALJ also found that to the extent Dr. Bowes' opinion contains greater restrictions that Dr. Hawley's October 2018 opinion, Dr. Hawley's opinion is more persuasive.  The ALJ previously discussed reasons for finding Dr. Hawley's supported by and consistent with the record.  The ALJ's reasoning and discussion is legally sufficient and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

1       2. Defendant's Motion for Summary Judgment, **ECF No. 25**, is

2 **GRANTED**.

3       **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

4 Order and provide copies to counsel.  Judgment shall be entered for Defendant and

5 the file shall be **CLOSED**.

6       **DATED** April 7, 2023.

7

8                                   LONNY R. SUKO

                         Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

ORDER - 26